Jonathan A. Dessaules, (SBN 019439)
Dessaules Law Group
5353 N. 16th Street, Suite 110
Phoenix, AZ  85016
Telephone:  (602) 274-5400
Facsimile:  (602) 274-5401
Email:  jdessaules@dessauleslaw.com

Alexandra N. Fries (CA SBN 292651)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone:   (213) 243-2360
Facsimile:   (213) 243-2539
Email:        afries@jonesday.com

Attorneys for Defendant
*Experian Information Solutions, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PERRY PETERSON, | CASE NO. 2:14-cv-02056-GMS |
| Plaintiff, | Assigned to: Judge G. Murray Snow |
| v. | **EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR AN ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE** |
| AMERICAN EXPRESS, TRANSUNION, EQUIFAX and EXPERIAN, | |
| Defendants. | |

NAI-1500507415v4

## I.     INTRODUCTION

This motion for an adverse inference instruction is based on plaintiff's admission, under oath, that he willfully destroyed evidence relevant to this lawsuit.  Specifically, plaintiff testified that he "purges" his emails "routinely" and in fact, purged his emails after commencing this lawsuit and against after receiving document requests from Experian.  Plaintiff also testified that since suing Experian he has discarded his old cell phone and has not been able to locate it.

In order to prevail on a motion for spoliation, Experian must demonstrate that plaintiff was on notice of his need to preserve evidence, that he destroyed evidence with a culpable state of mind, and that the evidence at issue is relevant.  With respect to the second element, the Ninth Circuit has held that a party need not demonstrate bad faith in order to establish culpability.  Rather, intentional destruction is sufficient to establish willfulness.  An Arizona District Court cases exemplifies this standard in practice:  In *Food Servs. of Am., Inc. v. Carrington*, 2013 U.S. Dist. LEXIS 120194, *65, (D. Ariz. Aug. 23, 2013), the court held that one of the parties breached its duty to preserve evidence when he deleted evidence off his computer because it was monopolizing the available space on his computer.

The facts at issue here satisfy each prerequisite mentioned above.  *First*, having instigated this lawsuit, plaintiff was on notice of his duty to preserve evidence.  *Second*, plaintiff testified that he "purged" his email.  He is not the victim of a computer crash or an inadvertent automatic deletion; rather, plaintiff purposely deleted hundred of emails after this case was initiated.  He also admitted to purchasing a new phone and discarding his old one.  Again, his phone was not lost or stolen, he simply got rid of it.  And, *third*, by plaintiff's own admission, information in his email and on his phone would have been "pertinent" because it dealt with "business discussions, business opportunities, [and] investment opportunities."

Experian has been harmed by plaintiff's failure to maintain evidence as required under the Federal Rules of Civil Procedure.  Plaintiff testified that he determined his

damages based on the amount of money he believes he would have earned had he not been forced to sit-out on a business deal.  Essentially, plaintiff is arguing that but for an inaccuracy on his Experian credit file, he would have been able to get financing to invest in a lucrative business opportunity.  These damages are inherently speculative, and there are numerous alternative explanations for plaintiff's failure to obtain financing, and there certainly was no guarantee that even with financing the deal would have closed, he would have made money, and so on.

Emails and text messages discussing these alleged business deals would have provided Experian with essential evidence to this case, and may have been critical in establishing its defense.  Without evidence of these business deals, Experian is forced exclusively to rely on the biased testimony of plaintiff and his friend, without any evidence in hand to contradict their testimony, call their veracity into question, or undermine the conclusions plaintiff and his witness present to the jury.  Accordingly, Experian respectfully requests that the Court instruct the jury to make an adverse inference with respect to the one-sided testimony about "lost business opportunities" plaintiff intends to present at trial.

## II.   RELEVANT FACTS

**a.    Plaintiff is Repeatedly Put on Notice of Impending Litigation with Experian:  Plaintiff Engages in Litigation with AMEX Over the Same Accounts, Sends Dispute Letters to Experian, and Ultimately Commences this Lawsuit.**

As far back as 2011, plaintiff was on notice that it was reasonably likely that he would engage in litigation with Experian.  From 2011 onward, the likelihood of litigation only increased, as is evidenced by the dispute letters plaintiff sent Experian in late 2013 and mid-2014.  Plaintiff eventually sued Experian in August 2014.

### i.    AMEX Sues Plaintiff for Failure to Pay a Debt.

In 2011 American Express ("AMEX") sued plaintiff and Adobe Financial Corporation in Arizona state court for failure to remit payment on a debt.  CV2011-099021.  AMEX argued that plaintiff was *personally* liable for the debt, while plaintiff disputed any personal liability.  The case was litigated for over two years.

### ii.      Plaintiff Sends Experian Two Letters Inquiring About the Appearance of His AMEX Tradeline on his Experian Credit File.

On or around August 6, 2013, plaintiff sent Experian a letter asking it to investigate his AMEX tradeline.  Subsequently, on or around June 27, 2014, plaintiff sent Experian a second letter asking Experian to again investigate the AMEX tradeline appearing on his credit file.  These two letter are evidence that plaintiff understood that these was a dispute between himself and Experian, and that litigation was foreseeable.

### iii.      Plaintiff Sues Experian on August 11, 2014 and the Parties Begin Litigating this Case.

Shortly after sending his second letter, plaintiff brought suit against Experian and others in Arizona state court alleging violations of the Fair Credit Reporting Act.  The crux of plaintiff's argument is that because the AMEX tradeline was incorrectly recorded on his Experian credit file, his FICO score was lower, which meant that he would have been denied credit *if* he applied.  According to plaintiff, he was therefore forced to decline an invitation to invest in two business ventures proposed by his friend because he could not come up with the requisite financing.  Plaintiff testified that the damages he demands from each credit bureau are calculated based on this purported missed opportunity.[1] Accordingly, it was critical to Experian's defense strategy that it develop and uncover all relevant facts pertaining to the purported lost business opportunity and plaintiff's damages.  This, of course, included gathering evidence to support Experian's defense that these damages are entirely speculative and not proximately caused by plaintiff's Experian credit file.

### b.      Experian is Forced to Depose Plaintiff on Three Separate Occasions, and Incur Substantial Cost.

Plaintiff's deposition was ultimately taken three times.  During his first deposition and within his interrogatory responses, plaintiff indicated that he neither applied for nor

---

[1] Q . . .  [W]hat is the amount you asked for in damages in the complaint?  A  $100,000 from each bureau.  Q  How did you calculate that number?  A  I calculated it on lost opportunity, and I just figured I'm not going to get an infinite number of months of money that I wasn't able to get.  So, I took 15,000 a month, which would have been my share of, you know, investing in Tye Smoole's business. . . ."  Exhibit I, Peterson's June 19, 2015 Deposition Transcript [hereinafter "Peterson Dep. Tr."] at 215:18-216:1.

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

1   was denied credit.  Exhibit IV, Plaintiff's Response to Experian's Special Interrogatories,

2   Response No. 7 ("Since 'Credit Inquiries' further reduce FICO scores, Plaintiff chose to

3   forgo applying for credit . . . .").  Days after his deposition, plaintiff emailed defendants

4   his purported supplemental production, which consisted of an alleged "Notice of Credit

5   Denial" letter that was not previously produced.  Plaintiff also refused to discuss his

6   settlement with AMEX[2] in the present lawsuit, even though a protective order was entered

7   in this case and any discussions of liability would be directly relevant here.

8       As a result, because plaintiff specifically stated on several occasions, that he was

9   never denied credit, Experian was unable to question plaintiff on the circumstances

10  surrounding any purported credit denial.  Additionally, Experian was denied its right to

11  inquire into the settlement agreement between AMEX and plaintiff.  Defendant,

12  accordingly, approached the Court and asked that it reopen plaintiff's deposition.  In the

13  meantime, plaintiff proceeded to produce several hundreds of pages of additional

14  "supplemental" documents, which required significant time and expense to review and

15  analyze.

16      During his second deposition, plaintiff took an extremely narrow view of the

17  Court's Order permitting his deposition.  He insisted that he was only required to answer

18  questions regarding his AMEX settlement, and refused to answer any questions pertaining

19  the hundred of documents he produced after his first deposition – including questions

20  pertaining to his purported credit denial letter; medical receipts; lines of credit; etc.

21  Exhibit II, Peterson's July 20, 2015 Deposition Transcript at 55:4-6; 55:20-56:23.

22      Accordingly, Experian was compelled to approach the Court once more, and ask

23  permission to depose plaintiff for a third time and to bring this motion for spoliation based

24  on testimony elicited during plaintiff's first deposition.  The Court again consented, and

25  Experian proceeded with plaintiff's third deposition and this motion, both of which caused

26  Experian to incur further unnecessary cost.

27

28  _____
    [2] AMEX, a named defendant in this case, was voluntarily dismissed with prejudice on or around September 2014.

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

1

2     **c.     Plaintiff Admits that he Purged his Email and Discarded his Cell Phone *After* Initiating this Lawsuit.**

3         As an initial matter, plaintiff did not object to Experian's requests for production,

4     but stated in response to virtually every request "See attached information."  Exhibit III.

5     Since plaintiff agreed to produce all relevant documents, Experian had no reason to doubt,

6     at that point, that the production it received from plaintiff was complete.  Nevertheless,

7     Experian's counsel asked plaintiff to describe how he went about collecting relevant

8     documents, and immediately realized that plaintiff had not in fact reviewed all the

9     potential evidence in his possession, but was apparently planning on supplementing his

10    production when (and if) he got around to it.  *See* Peterson Dep. Tr. 57:1-16 ("Q . . . Did

11    you give us everything responsive to our document requests?  A I think I said in the

12    interrogatories and the production -- or, request for production, that I could supplement

13    them. So, this may not be everything.")

14        Plaintiff went on to explain that he thought that there was additional relevant

15    information in his possession at one point, but he did not produced it to Experian because

16    either 1) he had hardly looked for it/did not know where it was; and/or 2) had destroyed it:

17        Q So, are there certain areas of -- are there certain documents you can think
18        of right now that you haven't produced?

19        A **Yes**. The problem is, I can't -- I have a new phone, so I can't get my old
          text. **I think there are some texts that would be pertinent and probably
20        some e-mails that are pertinent, but I can't find them right now**.  *Id.* at
          57:1-16 (emphasis added).

21        Q What about the e-mails? I didn't see any e-mails. I'm curious?

22        A **There could be e-mails that I don't have. I purge my e-mail** every so
          off and on because it gets full.  **So there's e-mails and texts I'd like to
23        have, and I'm not sure I can find them**.

24        Q Have you looked for them yet?

25        A Yes.

26        Q When did you look for them?

27        A **This morning**.

28

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

Q You didn't look for them when you received these document requests?

A **I didn't think about them at that time**. *Id.* at 57:20-58:7 (emphasis added).

After the revelation that there were relevant emails and text messages that plaintiff had either purged or discarded, Experian's counsel inquired further and discovered that plaintiff 1) "purges" "*all*" of his emails; 2) that he purged his email after this litigation commenced; and 3) that these emails contained discussions surrounding "business discussions, business opportunities, [and] investment opportunities" – information that is directly relevant to plaintiff's purported damages in this lawsuit:

Q When did you last purge your e-mail?

A I do it whenever it gets full. Whenever it caps out at 10 megabites or whatever the limit. And I can't get any more e-mails, **so I delete all the e-mails**.

Q How many e-mail addresses do you have?

A I have at least two.

Q And do you purge both of them?

A Yes.

Q When was the last time you recall purging one of your e-mail addresses?

A I'd say a few months ago.

Q So **after this litigation started**?

A **Yes**. I'm required to or I have no capacity to get more e-mails.

Q And is it possible that in deleting those e-mails, **you may have deleted some of the ones that might have been relevant to this litigation**?

A I think I may have deleted things that would have benefited me. **Business discussions, business opportunities, investment opportunities**. *Id.* at 59:15 (emphasis added).[3]

Q So you purged your e-mail -- both accounts or one account?

A **I routinely do**. *Id.* at 58:21-59:23-25 (emphasis added).

With respect to his cell phone, which he testified contained text messages relevant to the

---

[3] *See also* Peterson Dep. Tr. 64:10-12 ("Q Since receiving our document request, have you deleted any e-mails? A I'm sure I have.").

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

case, plaintiff explained that since the litigation began he bought a new cell phone and does not know where his old phone is. *Id.* 60:17-61:25. Moreover, when asked whether he deletes text messages, plaintiff explain "Oh, I'm sure I have[,]" and extrapolated that he might do so for "privacy"reasons. *Id.* at 62:1-4.

## III.   LEGAL STANDARD

Litigants have an obligation to preserve evidence from the moment that litigation is reasonably anticipated. *Slep-Tone Entm't Corp. v. Granito*, 2014 U.S. Dist. LEXIS 2023, *9 (D. Ariz. Jan. 7, 2014) (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). Moreover, the obligation to preserve discoverable materials is an affirmative one; it requires that the party take steps to prevent the destruction of relevant evidence, and similarly prohibits them from purposely destroying evidence. *Marceau v. IBEW, Local 1269*, 618 F. Supp. 2d 1127, 1174 (D. Ariz. 2009). If documents or other information are not preserved, a sanction may be imposed. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.").

Specifically, the Court may order the exclusion of certain evidence or "permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Id.; see also Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) ("The evidentiary rationale [of adverse inference] is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . ."); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.") (cited in *Marceau*, 618 F. Supp. 2d at 1174).

"A party seeking sanctions for spoliation of evidence must prove the following elements: 1) the party having control over the evidence had an obligation to preserve it

when it was destroyed or altered, 2) the destruction or loss was accompanied by a 'culpable state of mind,' and 3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence." *Food Servs. of Am., Inc. v. Carrington*, 2013 U.S. Dist. LEXIS 120194, *65, (D. Ariz. Aug. 23, 2013) (internal citations and quotation marks omitted).

## IV.   ARGUMENT

**a**.   **Plaintiff's Obligation to Preserve Relevant E-mails, Text Messages, and Documents Arose No Later than August 2013.**

"A party engages in spoliation if he or she has 'some notice that the document were potentially relevant' to the litigation before they were destroyed." *Slep-Tone,* 2014 U.S. Dist. LEXIS at *9 (citing *Akiona,* 938 F.2d at 161). "Stated differently, the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id*. "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* (internal citations omitted).

Plaintiff had a duty to preserve evidence as soon as it was "reasonably foreseeable" that he would sue Experian. Plaintiff was on notice that there was a potential lawsuit on the horizon whilst in the midst of litigating the characterization of his AMEX tradelines in 2011 in a separate lawsuit. Specifically, in that initial lawsuit plaintiff was arguing that he was not personally liable for the debt associated with the AMEX tradelines. As evidenced by his August 2013 letter to Experian, plaintiff was also aware that his Experian credit file similarly listed plaintiff as personally responsible for the AMEX debt. Accordingly, at the outset of the AMEX lawsuit, but at the very latest by August 2013, when plaintiff sent a dispute letter to Experian, it was reasonably foreseeable that plaintiff and Experian would also litigate this issue down the road. In August 2014 plaintiff sued Experian, and the possibility of litigation became a reality. At that point, it is indisputable that plaintiff was

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

obligated to retain all evidence in his possession.

**b.      Plaintiff Purged "All" Emails and Discarded His Cell Phone with a Culpable State of Mind.**

"When a party on notice intentionally destroys, rather than accidentally loses, that evidence, it is a 'willful' spoliator even if it did not intend to deprive an opposing party of relevant evidence." *Food Servs. of Am.*, 2013 U.S. Dist. LEXIS at *65 (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).  For instance, in *Leon,* the Ninth Circuit held that destruction is willful when a party knows he is under a duty to preserve evidence, but nonetheless intentionally deletes files and documents.  464 F.3d at 959. Additionally, in *Glover*, the Ninth Circuit affirmed that "a finding 'bad faith' is not a prerequisite to this corrective procedure.  Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to litigation.'"  6 F.3d at 1329 (internal citations omitted); *see also Marceau v. IBEW, Local 1269*, 618 F. Supp. 2d 1127, 1174 (D. Ariz. 2009) ("Moreover, despite Defendants' contention to the contrary, the party seeking to introduce evidence of spoliation need not establish bad faith on the part of the party who destroyed the evidence." (referencing *Glover*, 6 F.3d at 1329)).  And, in a situation quite similar to the issue at hand, Arizona's District Court recently held that a party "willfully breached" his duty to preserve evidence when he "erased data to improve the performance of his computer." *Food Servs. of Am.*, 2013 U.S. Dist LEXIS at 65.  The court explained that "[a]lthough the Court can appreciate the practical difficulties with preserving evidence on one's personal computer, the duty to preserve in the midst of litigation is paramount.  [Defendant] willfully breached that duty." *Id.*

Plaintiff testified that he willfully deleted emails and discarded his cell phone, both of which contained relevant information.  By affirmatively deleting emails and purposely discarding his cell phone *after initiating this lawsuit*, plaintiff similarly breached his duty to preserve evidence.  It is not the case that plaintiff's emails and text messages were routinely and automatically destroyed without his knowledge.  Rather, plaintiff deliberately deleted emails and discarded his cell phone, without making any effort to

1   back up or save the data, after he filed this lawsuit and after he received discovery

2   requests from Experian.

3       In addition, though plaintiff is *pro se*, he may not be held to lower standards during

4   discovery, which would unduly prejudice the defendants.  *Warden v. Robinson*, 2013 U.S.

5   Dist. LEXIS 184092, *7 (D. Ariz. Dec. 3, 2013) ("The Ninth Circuit, however, has made

6   clear that a pro se litigant must 'abide by the rules of the court in which he litigates.'"

7   (quoting *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007).)  And, plaintiff actually

8   has ample litigation experience:  he has participated in at least 5 lawsuits, including

9   representing himself throughout two years of litigation against AMEX prior to suing

10   Experian.  Lastly, at various points in this lawsuit plaintiff has openly sought the advice of

11   an attorney, and presumably could have done so in this instance as well.

12   **c.      The Destroyed Evidence is Relevant to Plaintiff's Claims and Experian's Defense.**

13       As an initial matter, because the destruction of evidence in this lawsuit was willful

14   and not merely negligent, Experian need not show the relevance of the destroyed

15   evidence.  *See Zubulake*, 220 F.R.D. at 221.  Nonetheless, the evidence destroyed by

16   plaintiff was, by his own admission, relevant.

17       Evidence is relevant if "(a) it has any tendency to make a fact more or less probable

18   than it would be without the evidence; and (b) the fact is of consequence in determining

19   the action."  Fed. R. Evid. 401.  "A party 'can hardly assert any presumption of

20   ***irrelevance*** as to the destroyed documents' because "the relevance of. . . [destroyed]

21   documents cannot be clearly ascertained because the documents no longer exist[.]'"  *Slep-*

22   *Tone,* 2014 U.S. Dist. LEXIS at *16 (D. Ariz. Jan. 7, 2014) (citing *Leon*, 464 F.3d at 959)

23   (emphasis added).

24       Plaintiff's primary claim for damages arises from his alleged inability to participate

25   in two business ventures.  Namely, in the summer of 2014, plaintiff's friend allegedly

26   approached plaintiff and asked if plaintiff would be interested in investing in an auto

27   repair lending company.  Peterson Dep. Tr. 204:3-11.  According to plaintiff, he was

28

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

1  forced to decline because his FICO score was too low and he knew he would be denied

2  credit.  Peterson Dep. Tr. 46:14-17.  This same friend allegedly approached plaintiff again

3  in November or October 2014 with an offer to invest in an apartment complex.  Again,

4  plaintiff was forced to decline.  Peterson Dep. Tr. 211:12- 22.  Today, plaintiff insists that

5  the business ventures are profitable, and blames Experian for his inability to invest back in

6  2014.[4]

7         In support of this argument, plaintiff has indicated that he plans to rely on the

8  testimony of Tye Smoole, the friend that proposed the business opportunity.  Plaintiff

9  testified that discussions surrounding this business venture took place in person and likely

10  via text message, but he could not locate the text messages because he recently got a new

11  phone and could not locate the old phone.  Peterson Dep. Tr. 149:2-152:5.  Not a single

12  email or text message from Tye Smoole (or any other business partner) was produced in

13  this lawsuit, despite the fact that plaintiff admitted that these emails and text message

14  were relevant.  *Id.* at 57:9-16 ("Q. So, are there certain areas of – are there certain

15  documents you can think of right now that you haven't produced?  A yes.  The problem is,

16  I can't – I have a new phone, so I can't get my old text.  I think there are some texts that

17  would be pertinent and probably some emails that are pertinent, but I can't find them right

18  now.")

19         Consideration of these documents would have aided Experian in developing its

20  counter-arguments.  For example, Experian plans to argue that plaintiff has no actual

21  damages; that any "missed opportunity" damages are completely speculative, and that

22  there is no causal connection linking Experian to any purported damages.  It is very likely

23  that the deleted business emails and text messages would have shed light on the business

24  ventures that are the crux of plaintiff's case.  By deleting the emails and text messages,

25  plaintiff has denied Experian material with which to cross-examine both plaintiff and his

26

27  [4] "Q. So you're calculating your financial injury total based on the lost business opportunity that you discussed earlier, relating to a business opportunity with Tye Smoole? A. Right.  That's part of the total amount.  I had to pick a number and I picked a number.  The jury

28  can decide what the correct number is."  Peterson Dep. Tr. 299:21-300:2.

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

key witness at trial.  He has further denied Experian the ability to rely on those documents in conjunction with any dispositive motions prior to trial, and has unjustly hindered Experian's ability to properly prepare its defense.

## V.   AN ADVERSE INFERENCE INSTRUCTION AND EVIDENCE PRECLUSION SHOULD BE IMPOSED.

"The Court has discretion under its inherent powers to sanction a party who causes the spoliation of evidence.  *See Leon,* 464 F.3d at 958.  This discretion is broad and can range from minor sanctions, such as the awarding of attorneys' fees, *Leon*, 464 F.3d at 961, to more serious sanctions, such as dismissal of claims, *id*. at 958, or instructing the jury that it may draw an adverse inference, *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 386-87 (9th Cir. 2010)."  *Riley v. City of Prescott*, 2014 U.S. Dist. LEXIS 20511, *52 (D. Ariz. Feb. 18, 2014).

Plaintiff has admittedly destroyed evidence that pertains to the critical issue of damages in this lawsuit.  These documents would provide insight into the purported business ventures that plaintiff argues he was unable to participate in due to his Experian credit file.  In reality, there are a number of other reasons plaintiff may not have invested, other intervening circumstances that may have broken the causal chain, or evidence to support Experian's argument that these damages are utterly speculative.  With the emails and text messages destroyed, Experian is forced to rely on the biased testimony of plaintiff and his friend Mr. Smoole, with the added harm that these document could not be used to depose plaintiff and may not be presented to the jury during cross-examination. As a result, plaintiff has manipulated the narrative of this case by destroying evidence that would have permitted Experian to establish a counter-narrative that takes into account facts plaintiff may have left out or tried to downplay.

/ / /
/ / /
/ / /

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

1
2
3

**VI.     CONCLUSION**

4              In light of plaintiff's testimony that he has purged his email and discarded his phone, both

5     of which contained relevant information, the Court should grant Experian's motion and instruct

6     the jury that it may draw an adverse inference with respect to any testimony surrounding the

7     purported missed business opportunities plaintiff is relying on to establish damages.

8
9
10
11     Dated:          September 8, 2015          Respectfully submitted,

12                                                JONES DAY

13

14                                               By: _/s/ Alexandra Fries_____
15                                                          Alexandra N. Fries

16                                               Counsel for Defendant
                                                 *Experian Information Solutions, Inc.*
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION FOR ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**